### GULF REFINING CO. v. DISHROON et al. (No. 520.)

Court of Civil Appeals of Texas. Eastland.
Jan. 11, 1929.

Rehearing Denied Feb. 8, 1929.

P. C. Sanders, of Strawn, and H. H. Jennings, John E. Green, Jr., and John Broughton, all of Houston, for plaintiff in error.

Ritchie & Ranspot and George M. Ritchie, all of Mineral Wells, for defendants in error.

HICKMAN, C. J. This is an injunction suit instituted by defendants in error J. G. Dishroon, C. E. Allen, and Mrs. S. A. Stephenson against plaintiff in error to prohibit it from constructing and operating a station for the purpose of selling oil and gasoline

on certain real property situated in the town of Strawn, Tex., which plaintiff in error held under a lease from the Texas & Pacific Railway Company. A temporary injunction was issued, but the appeal in this case is from a final judgment perpetuating the temporary injunction, the substance of such judgment being that the plaintiff in error be perpetually enjoined and restrained from engaging in or conducting upon the property in controversy the business of handling, storing, or dealing in gasoline, lubricating oil, or other petroleum products, either at wholesale or retail, and from erecting and maintaining thereon any building or structure relating to the conduct of such business, and that it forthwith remove from said premises the partially erected structure theretofore placed thereon.

The findings of fact and conclusions of law filed by the trial judge indicate that the injunction was granted upon two grounds, namely: (1) That the business of the plaintiff in error as same would be conducted upon the property would constitute a nuisance; and (2) that the property having been restricted in its use to railroad uses and purposes, and having been used only for such purposes for a long period of time, constituted a dedication of the land on which the contemplated improvements were under erection for railway purposes and uses only, and that defendants in error were entitled, as owners of property bought with reference to such dedication, to the injunctive relief prayed for.

■■ It is insisted by plaintiff in error that the facts do not support the conclusion that the business contemplated to be conducted by it would constitute a nuisance. A proper disposition of this question would require that we set out in this opinion the substance of the testimony, but, since we have determined that the judgment of the trial court has support on another ground, we shall not discuss this contention further than to state that, in our opinion, the evidence, under the authorities, was not sufficient to support the judgment on this theory. The proposed business of plaintiff in error is a lawful and necessary business, and is not of such nature as that it would become a nuisance, if properly conducted. We cannot presume that the business would be improperly conducted. City of Electra v. Cross (Tex. Civ. App.) 225 S. W. 795; Boren et al. v. Magnolia Petroleum Co. (Tex. Civ. App.) 266 S. W. 623; Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125; Elliott v. Ferguson, 37 Tex. Civ. App. 40, 83 S. W. 56; Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308; Shamburger v. Scheurrer (Tex. Civ. App.) 198 S. W. 1069.

With respect to the ground upon which we think the judgment must be sustained, a more extended statement is desirable. In the year 1880 the railroad company owned a right of way across a tract of land owned by S. B. Strawn and J. M. Stuart. The present city of Strawn was laid off on this tract of land, so that the railroad running east and west would divide the town. The town was surveyed and platted by an engineer of the railroad company, the plat or map designating the number of the blocks, the names of the streets, etc. This plat disclosed the right of way of the railroad company. There was also left on this plat a strip of land 61 feet in width adjoining the right of way on the south and extending throughout the limits of the city. Across the railroad land in the plat were written these words, "Reserved for railway uses and purposes." South Front street, running east and west, adjoins this strip on the south, and North Front street, also running east and west, adjoins the right of way on the north. The land shown by such plat to be reserved for railroad uses and purposes consisted of all the land between North Front street and South Front street, and being the original right of way and the strip 61 feet in width. The lots of appellees adjoin South Front street on the south.

The plat was filed for record with the county clerk of Palo Pinto county on September 6, 1880. Attached to the plat was a certificate by William H. Abrams, land commissioner of the Texas & Pacific Railway Company, dated at Marshall, Tex., July 29, 1880, certifying, in substance, that the town of Strawn was surveyed and laid out in accordance with the plat. On the same day the plat was filed for record, September 6, 1880, there was also filed with the said clerk a deed from Strawn and Stuart, joined by their wives, to the Texas & Pacific Railway Company, conveying to said company 26 blocks in the town of Strawn, in accordance with the said plat, which was recited in the deed to have been made by the railway company, the blocks conveyed being all even numbered blocks from block No. 2 to block No. 52, inclusive.

Immediately following the description of the blocks by numbers and as a further description of the property conveyed was this language:

"And all that certain strip of land sixty-one (61) feet in width lying between South Front Street and the railroad right of way within said town of Strawn, said strip of land not to be alienated by the said railway company, but to be held by them for railroad uses and purposes."

With these general facts in mind, the following findings of fact by the trial court will disclose the essential facts upon which our judgment will be based:

"The platting and laying out of the town by the Railway Company and the execution of the conveyances mentioned in the 5th par-

agraph above, were contemporaneous and constituted but one transaction. The consideration moving to Strawn and Stuart for the execution of the deed being the location of the depot upon the town plat and the subdividing and laying out of the town as shown by the map or plat.

"No structures or buildings of any character other than the depot have ever at any time been located on either side of the railway tracks on the strip of land above mentioned down to the time of the partial erection of the structure described in the Plaintiff's petition.

"A short time prior to the filing of Plaintiff's bill and on or about the ——— day of ———, A. D. 1927, the Texas & Pacific Railway Company executed to the defendant, Gulf Refining Company, a lease for a period of five years upon a lot of ground out of the strip of land above mentioned, lying between the tracks of the Railway Company and South Front Street, and immediately adjacent to said South Front Street, for the purpose of building and operating an oil supply station for the conduct of a wholesale and retail business in gasoline, lubricating oils, and other petroleum products, such business having no relation to the operation of the railroad business; and that said lot of land is immediately across said South Front Street opposite and near the premises of the Plaintiff's.

"I find that Texas & Pacific Railway Company and Strawn & Stuart sold blocks 19 and 20, upon which is situated the property of all of the plaintiff's and all other lots and blocks as designated upon the plat of the town, and that all purchasers of such lots and blocks, including the purchasers of blocks 19 and 20, purchased upon the faith of and in reliance upon the reservation and restriction of the strip of land hereinbefore mentioned, to railroad uses and purposes only.

"The property of the plaintiff's is situated in a desirable part of the town of Strawn and is used for residential purposes, the property of the plaintiffs Dishroon and Mrs. Stephenson constituting their respective homesteads.

### "Conclusions.

"I conclude that the defendant is not entitled to operate the business in question upon the lot of land involved and that plaintiffs are entitled to the injunction sought in their bill. The owners having dedicated the strip of land on which the contemplated improvements were under erection for Railway purposes, they and those claiming under them are bound by this dedication and the Citizens affected thereby are entitled to relief. Moreover the lives, comfort, and safety of the citizen and his family relatively speaking ought to be more sacred in law than commercialism. I do not believe that a man

should be required to wait until he has been blown into eternity before a cause of action would arise in his favor, but I do believe that injunction is the proper remedy to stop the onward march of approaching danger."

Restrictions as to the use of property such as those contained in the deed and plat under consideration have been construed many times by the courts of this and other states. While the theories upon which such restrictions are enforced are varied, yet the results declared are practically uniform. Some authorities treat such restrictions as a dedication, others as creating a servitude against the land so restricted, with a corresponding easement appurtenant to the adjacent lands, and others as merely a restrictive covenant. Some cases enforce the restrictions on still other theories. A restatement by us of the rules and theories announced in the reported cases would serve no useful purpose. The subject is exhaustively treated in the following authorities: Harrison v. Boring, 44 Tex. 255; Lamar County v. Clements, 49 Tex. 347; Temple v. Sanborn, 41 Tex. Civ. App. 65, 91 S. W. 1095; Hooper v. Lottman (Tex. Civ. App.) 171 S. W. 271; Gulf Sulphur Co. v. Ryman (Tex. Civ. App.) 221 S. W. 310; note in 21 A. L. R. pp. 1281 to 1327; Tiffany on Real Property (2d Ed.) c. 15; Devlin on Deeds (3d Ed.) § 977.

From a consideration of these authorities, the conclusion is drawn that the controlling question is whether the original grantors, in making the covenants, intended that they should be for the benefit of themselves alone or for the benefit of the adjoining property. In the instant case we have no difficulty in arriving at the conclusion that it was the intention of the parties to create the restriction for the benefit of the remaining land, which was being platted for sale as residence and business lots. The platting of the town of Strawn and the subsequent sale of lots therein was the joint enterprise of the railway company and Strawn and Stuart. They must have realized the added value that would be placed on all adjacent lots by such restriction. Otherwise the plat need not have disclosed such restriction. The restriction against alienation contained in the deed need not be considered by us in determining whether a fee passed to the railroad company by the deed, but is important in determining the intention of the parties. The surrounding circumstances and conditions are also important. The appellees acquired their property with reference to the plat. The evidence supports the conclusion that the value of this property would be lessened by the contemplated violation of the restrictive covenants disclosed on this plat, and it is our opinion that the trial court did not err in perpetually enjoining the violation by appellant of this restrictive covenant.

The contention that the purpose for

which it is contemplated using the premises would not be inconsistent with the restriction cannot be sustained. The structure contemplated was to be used for conducting a wholesale and retail oil and gasoline business. The only relation between such business and the railway business is that the products to be sold would be shipped as freight over the railway line. For the property to be used for railway purposes can have no other meaning than that the primary purpose is for the benefit of the railway company, and the use thereof for a purpose which merely brings some incidental benefits to the railway company is clearly not a use for railway purposes. If this use of the property could be construed as being for railway uses and purposes, then any character of business could be construed as being conducted for such uses and purposes so long as it received goods by freight over the railroad. Such construction would render the restriction meaningless.

It is suggested in plaintiff in error's brief as a fundamental error that the railway company was a necessary party to this suit. The question was not raised in the court below by any plea of abatement, nor was any effort made by plaintiff in error to have said railway company made a party. While clearly the railway company would have been a proper party to this action, yet it was not such an indispensable party as would render the judgment void.

The judgment of the trial court will be affirmed.